# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK SHIELDS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-19-801-D |
| | ) |
| R.C. SMITH, Warden, *et al.*, | ) |
| | ) |
| Respondents. | ) |

# ORDER

This matter is before the Court for review of the Supplemental Report and Recommendation [Doc. No. 11] issued by United States Magistrate Judge Gary M. Purcell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Purcell recommended that the Court dismiss Petitioner's action without prejudice.

Within the time limits authorized by the Court, Petitioner filed objections. [Doc. No. 13]. Accordingly, the Court must make a *de novo* determination of any portion of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

## BACKGROUND

Petitioner is serving a life sentence for a 1984 first-degree murder conviction. He does not challenge the validity of his conviction and sentence. Rather, Petitioner asserts, *inter alia*, that he has been denied due process regarding the application of earned credits to his sentence and that he is entitled to the parole procedures that were in effect when he was convicted in 1984. Accordingly, the Court analyzes Petitioner's claims under 28

U.S.C. § 2241 since Petitioner challenges the execution of his sentence. *See, e.g., Yellowbear v. Wyoming Attorney Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) ("Section 2241 is a vehicle … for attacking the execution of a sentence" while a "§ 2254 petition, on the other hand, is the proper avenue for attacking the validity of a conviction and sentence."); *Henderson v. Scott*, 260 F.3d 1213, 1214 (10th Cir. 2001) (where the petitioner claimed that the Oklahoma Pardon and Parole Board decreased the frequency of his parole reconsideration dates in violation of the Ex Post Facto Clause of the United States Constitution, the petition concerned the execution of the sentence under 28 U.S.C. § 2241).

**DISCUSSION**

A § 2241 petitioner must establish that he is being held in state custody in violation of the United States Constitution or other federal law. *See* 28 U.S.C. § 2241(c)(3). Further, the petition generally must be filed prior to the expiration of the applicable statutory limitations period and upon the petitioner's exhaustion of available state remedies. *See Dulworth v. Evans*, 442 F.3d 1265, 1268-1269 (10th Cir. 2006); 28 U.S.C. § 2244(d)(1).

**I.     Grounds One and Seven**

Construing the Petition broadly, Petitioner asserts in Grounds One and Seven that he was denied due process regarding the application of earned credits to his sentence. Although Petitioner is correct that the Oklahoma Pardon and Parole Board ("PPB") treats a life sentence as a 45-year sentence to calculate when a prisoner is eligible for parole, *see Anderson v. State,* 130 P.3d 273, 282 (Okla. Crim. App. 2006), Petitioner's assertion that the PPB converted his life sentence to 45 years, thus he is now eligible for earned credits,

is inaccurate. A prisoner serving a life sentence is incarcerated for his natural life, unless he receives a pardon or commutation. *Anderson*, 130 P.3d at 286-287 ("Life, in Oklahoma, means life … Defendants sentenced to life imprisonment in this way remain under that sentence all of their days, and obtain their liberty only after a recommendation from the [PPB], and then only conditionally, under terms dictated by the Governor, if ever.").

Further, Oklahoma law prohibits the use of earned credits to reduce a sentence of life imprisonment. OKLA. STAT. tit. 57, § 138(A) ("No deductions shall be credited to any inmate serving a sentence of life imprisonment …."); *Gamble v. Evans*, 165 Fed. Appx. 698, 700 (10th Cir. Feb. 8, 2006) (unpublished)[1] (holding that an Oklahoma inmate serving a life sentence was not entitled to the use of earned credits for early release and accordingly enjoyed no liberty interest in the credits).

Petitioner cites to no relevant, controlling authority for his claim that his life sentence should be construed as a sentence which is less than his natural life. The Oklahoma Court of Criminal Appeals recently reaffirmed that, under Oklahoma's penal statutes, "a life sentence means the natural life of the offender" and that "[l]awyers continue to confuse the punishment set out in our statutes with the administrative rules of the [PPB]." *Lee v. State*, 422 P.3d 782, 785 n. 1 (Okla. Crim. App. 2018) ("The fact that the [PPB] has arbitrarily set … 45 years" as the number the PPB uses to determine parole eligibility "does not affect the actual sentence; that number affects only when the [PPB] will consider the inmate for purposes of parole."). Thus, contrary to Petitioner's assertion, Oklahoma law

---

[1] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

does not convert his life sentence to a term of years. Thus, he is not entitled to the use of earned credits for early release, and Petitioner enjoys no liberty interest in earned credits. Accordingly, Grounds One and Seven should be dismissed.

**II.     Grounds Two through Seven**

In Grounds Two through Seven, Petitioner asserts numerous perceived inadequacies in how his parole eligibility and consideration have been handled. Most of his claims are rooted in alleged due process violations, but his claims also implicate the Equal Protection Clause and the Ex Post Facto Clause of the United States Constitution. The Court will address the alleged due process violations first.

**A.     Due Process**

Petitioner identifies several perceived shortcomings in how his consideration and eligibility for parole have been handled by the PPB. The law is clear, however, that Petitioner has never had a due process liberty interest in parole under the Oklahoma parole statutes before 1998 or after.[2] *See Phillips v. Williams*, 608 P.2d 1131, 1134 (Okla. 1980) ("A parole system which provides for the 'possibility of release' does not create a constitutionally protected liberty interest."); *Ballard v. Franklin*, 463 Fed. Appx. 732, 735 (10th Cir. Nov. 23, 2011) (unpublished)[3] (an Oklahoma prisoner has no due process liberty

---

[2] The legislative history of the Truth in Sentencing Act is complicated. *See, e.g., Collins v. Workman*, 125 Fed. Appx. 246, 248 (10th Cir. March 8, 2005) (unpublished) (recognizing that the Truth in Sentencing Act never went into effect). The statute currently in effect is OKLA. STAT. tit. 57, § 332.7 (2018).

[3] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

4

interest in parole under the Oklahoma parole statutes); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Griffith v. Bryant*, 625 Fed. Appx. 914, 917-918 (10th Cir. Sept. 15, 2015) (unpublished).[4] Thus, Petitioner has no claim for a violation of procedural or substantive due process.

B.  **Equal Protection**

Petitioner asserts that the Oklahoma Legislature has singled out "pre-1996"[5] life offenders, like him, to deprive them of early release. Title 57, § 332.7(A) of the Oklahoma Statutes provides that a person in the custody of the Department of Corrections for a crime committed prior to July 1, 1998 shall be eligible for consideration for parole at the earliest of four specified dates. OKLA. STAT. tit. 57, § 332.7(A). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Under § 332.7(A), all pre-1998 offenders serving a life sentence are considered alike for purposes of parole consideration. OKLA. STAT. tit. 57, § 332.7(A); *see also Coggin v. Champion*, 1999 WL 614700, at *2 (10th Cir. Aug. 13, 1999) (affirming the district court's dismissal of a prisoner's equal protection claim – alleging he was treated differently than

---

[4] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

[5] Although Petitioner references 1996, the operative date in the statute is July 1, 1998. *See* OKLA. STAT. tit. 57, § 332.7(A).

5

inmates sentenced under the new legislation – because he failed to show that "criminals convicted and sentenced to life imprisonment on the same date as [him] received a determinative sentence under the Act for parole eligibility purposes, as required for an equal protection claim.") Thus, Petitioner has no equal protection claim.

C. **Ex Post Facto**

The United States Constitution prohibits the states from passing any ex post facto law. U.S. CONST. art. I, § 10. The Ex Post Facto Clause is directed "'at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) (*quoting California Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995)). A law violates the Ex Post Facto Clause when the law: (1) is retrospective, *i.e.,* it applies to events occurring before its enactment; and (2) disadvantages the offender affected by it. *Henderson*, 260 F.3d at 1215.

At the time of Petitioner's conviction, Oklahoma's Forgotten Man Act, OKLA. STAT. tit. 57, § 332.7 (1971), required the PPB to consider "every inmate … for parole on or before the expiration of one-third of his maximum sentence." *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979). Once parole was denied, an inmate was to be considered for parole "no later than [12] months subsequent to their last review." *Id.* The current OKLA. STAT. tit. 57, § 332.7(A) (2018) identifies four specified dates, whichever is earliest, on which an inmate, whose crime was committed prior to July 1, 1998, shall be eligible for parole consideration. Once denied parole, offenders like Petitioner, who were convicted of a violent crime, are not eligible for parole reconsideration for three years. *See* OKLA. STAT. tit. 57, § 332.7(E)(1) (2018); OKLA. STAT. tit. 57, § 571(2)(i). Additionally, when

the PPB considers Petitioner's application for parole, initially, it considers only a "completed report submitted by the staff of the [PPB]," informally known as a jacket review, rather than holding an in-person hearing, since Petitioner is a violent offender. OKLA. STAT. tit. 57, § 332.7(D)(1); *see also Maynard v. Fallin*, 564 Fed. Appx. 943, 945 (10th Cir. April 29, 2014) (unpublished).[6]

Petitioner asserts that the provisions limiting his parole reconsideration to every three years deprives him of the opportunity for early release in violation of the Ex Post Facto Clause. Further, he contends that the jacket review by the PPB and the absence of an in-person hearing violates the Ex Post Facto Clause.

Section 332.7(E)(1) does not facially increase the likelihood of punishment. OKLA. STAT. tit. 57, § 332.7(E)(1) (2018). Nor, does it change the length of Petitioner's sentence in any way. Although § 332.7(E)(1) affects the timing of subsequent parole consideration dates, it does not affect the timing of the initial parole consideration. Further, the provision permits the PPB in its discretion to consider parole before the three years has expired. *Id*. ("Except as otherwise directed by the [PPB] …."). "Taken together, these factors indicate that under the Oklahoma parole system, [Petitioner is] not subject to a longer punishment because of the amended statute. [Section 332.7(E)(1)] only allows less frequent parole reconsideration dates in situations where the [PPB] determines that more frequent reconsideration is unnecessary. This is insufficient to violate the ex post facto prohibition." *Henderson*, 260 F.3d at 1217; *see also Maynard*, 564 Fed. Appx. at 948 (Section 332.7,

---

[6] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

which increases the time between the denial of parole and the reconsideration for parole, does not on its face violate the Ex Post Facto Clause).

Further, Petitioner has not presented any changed circumstances showing that he is entitled to parole or that a change in his reconsideration dates is "critically important." *Id*. Petitioner was convicted of first-degree murder and sentenced to life in prison. Viewing the serious and violent nature of his offense and the life sentence imposed for the conviction, Petitioner's prospects for parole are "remote." *Henderson*, 260 F.3d at 1217. "Equally problematic for [Petitioner] is that he has no constitutionally protected right to an annual [in-person] parole hearing." *Maynard*, 564 Fed. Appx. at 949; *see also Taylor v. Hargett*, 2000 WL 135172, at *1 (10th Cir. Feb. 7, 2000) (rejecting inmate's claim that he was denied his right to personally appear at his parole hearing and holding that the PPB's jacket review was constitutionally sufficient). "Parole is a privilege," not a constitutional right. *Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir. 1992). As a result, Petitioner has not established an Ex Post Facto Clause violation concerning § 332.7(E)(1), either as a facial challenge or as a challenge to the statute as applied to Petitioner.

### III. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a one-year limitations period for habeas petitioners who are in state custody. 28 U.S.C. § 2244(d)(1)(A)-(D). Because Petitioner challenges the execution of his sentence under 28 U.S.C. § 2241, the one-year limitation period began to run when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Thus, applying § 2244(d)(1)(D) to the present

8

case, the one-year statute of limitations began to run when Petitioner became aware of the policy providing for a jacket review every three years rather than an annual personal appearance before the PPB.

Petitioner states that he was considered for parole in 2005. [Doc. No. 1 at 15]. From Petitioner's own recitation of the facts, he was aware that he was receiving only a jacket review every three years as early as 2005. Petitioner's assertion that he was unaware of his claim until 2016 when his friend filed for post-conviction relief does not change the fact that he was aware of the factual predicate of his claim in 2005. Petitioner does not state the exact date of his 2005 parole hearing, but even assuming it occurred on the last day of 2005, December 31, 2005, the limitations period would have expired on January 1, 2007. This action was not filed until August 30, 2019, and in the absence of tolling, is clearly untimely. *See, e.g., Petties v. Jones*, 2013 WL 960096, at *3 (W.D. Okla. Feb. 14, 2013).

In his Petition, Petitioner states that he has not filed any other petitions, applications, or motions concerning the instant issues. Equitable tolling is limited to "rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). Petitioner has not presented any rare and exceptional circumstances to justify equitable tolling of the limitations period, nor has he established that he has diligently pursued his federal claims. *Id.*

In support of his equitable tolling argument, Petitioner states that it took him "three years to purchase the case law[] and documentation from the Oklahoma House of Representatives …." [Doc. No. 13 at 22]. However, "a claim of insufficient access to

relevant law … is not enough to support equitable tolling." *Gibson*, 232 F.3d at 808. Moreover, Petitioner "has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims." *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). Therefore, equitable tolling is not appropriate.

## CONCLUSION

Upon *de novo* review of the issues presented, the Court concurs with Judge Purcell that Petitioner's action should be dismissed without prejudice. Accordingly, Judge Purcell's Supplemental Report and Recommendation [Doc. No. 11] is ADOPTED in its entirety. Petitioner's habeas petition is DENIED.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases,[7] the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a petitioner. A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when

---

[7] The Rules Governing Section 2254 Cases provide that a "district court may apply any or all of these rules to a habeas corpus petition not [brought under § 2254]." Rules Governing Section 2254 Cases, Rule 1(b); *see also Heath v. Norwood*, 325 F. Supp. 3d 1183, 1197 n. 9 (D. Kan. 2018). The Court elects to do so here.

the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Upon consideration, the Court finds the requisite standard is not met in this case. Therefore, a COA is DENIED. The denial shall be included in the judgment.

**IT IS SO ORDERED** this 22nd day of November 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge